

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00246-CR

_____

STEVEN DANIEL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1850129

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Steven Earl Daniel appeals his conviction for driving while intoxicated (DWI), enhanced by a previous DWI conviction. *See* Tex. Penal Code § 49.09(a). In his only appellate point, Daniel argues that the trial court erred by overruling his motion to suppress, a motion grounded in Daniel's trial argument that the officer who arrested him for DWI lacked reasonable suspicion to stop Daniel's vehicle. Because the record supports the trial court's ruling, but contains a clerical error we will affirm the trial courts judgment as modified.

## I. BACKGROUND

The arresting officer's initial encounter with Daniel was captured on video, as was his subsequent stop of Daniel's vehicle. Viewed in a light most favorable to the trial court's ruling, the evidence showed the following:

On a Saturday evening in November 2024, Arlington Police Officer Donovan McCray was dispatched in response to "a disturbance" at a sports bar. In the parking lot of the sports bar, he saw two men parked in a metallic-orange-colored Volkswagen.[1] As Officer McCray approached, an unidentified woman pointed toward the vehicle and directed his attention toward "the one in the orange driving."[2]

---

[1]The vehicle was distinctive to Officer McCray because it was "the only bright orange car in the parking lot."

[2]In addition to being behind the wheel of an orange car, Daniel was wearing an orange jersey.

Daniel was in the driver's seat. Officer McCray asked Daniel to step out of the vehicle, and Daniel complied. Officer McCray then asked to see Daniel's driver's license, which Daniel handed him.

Officer McCray, who had "probably arrested . . . 150, maybe 200" people for DWI, observed that Daniel was "leaning a little bit" and noticed that he "smelled like alcohol." He asked Daniel if he had a ride. Daniel responded by pointing to his car and telling Officer McCray, "My ride is right here!" Officer McCray said to Daniel, "You been drinkin'."[3] Daniel's response: "So what does that have to do with anything?" Believing Daniel to be "impaired," Officer McCray warned him that if he got back in his car, then he would get arrested for DWI.[4] Daniel responded, "Well good, but I'm not driving." Officer McCray asked Daniel how he was going to get to his next destination, and Daniel said, "My AC." Apparently perplexed by what Daniel meant, Officer McCray continued questioning him. He again asked Daniel if he had a ride, and Daniel declined the idea and said that he would "walk." Officer McCray told him, "That's the best thing, 'cause if you get in this car, you will get arrested for DWI."

---

[3]From Officer McCray's tone on the video, it is difficult to tell whether he intended this as a question or an accusation—or both.

[4]When testifying at trial, Officer McCray distinguished being "impaired" from being "fully intoxicated" but acknowledged that it was a "similar thing." He averred that he did not believe that Daniel was sober.

After making a series of hand gestures and rambling statements, Daniel assured Officer McCray that "there is another ride available." When Officer McCray asked him who that was, Daniel folded his arms across his chest, shook his head, and responded, "It doesn't matter, sir, so are we done? And can I have my ID back?" Officer McCray said to him, "Before I give it to you, do you have a ride?" Daniel again responded that he would walk, and Officer McCray again mentioned that he had been drinking. Slurring his words, Daniel replied, "That doesn't mean I'm intoxicated, but can I have my ID . . . ?" Officer McCray told Daniel that he was "impaired," and Daniel—still speaking in a slurred cadence—declared, "Okay then I will impairedly [sic] walk down I[nterstate ]30 to where I live in Dallas." Officer McCray then told Daniel that he could not walk down I-30, and Daniel responded, "Well, whatever. Try me! And you can follow me." Officer McCray replied that he was "not about to follow [Daniel] all the way to Dallas," and Daniel again asked for his ID back.

Officer McCray handed Daniel his ID but warned him again that he was risking an arrest for DWI if he got back in the car. Daniel did not immediately get back in his car but maintained that he would stand directly in front of it until the police left. Officer McCray told Daniel, "You have to leave, honestly," and Daniel threatened to lie down in front of the car. Daniel began cursing at the police, telling them that he was going to "lay [his] ass down" and that they could "come tow this motherf[***]ing vehicle." But when Officer McCray again told him, "You have to leave," Daniel

4

relented and walked away from the scene with a man whom Officer McCray believed to be sober.[5]

After seeing Daniel walk away, Officer McCray also left the parking lot. But, less than half an hour later, he realized he had to return to the location. As Officer McCray was driving back to the sports bar, he saw the same orange Volkswagen in which he had seen Daniel earlier. The vehicle was idling by the curb on a public road. After seeing Daniel in the driver's seat of the Volkswagen, Officer McCray initiated a traffic stop, and Daniel was ultimately arrested and charged with DWI.[6]

## II. TRIAL

At trial, Daniel objected that that the stop of his vehicle was unlawful. He argued that Officer McCray lacked reasonable suspicion to pull his vehicle over when he did. After taking a look at the video from Officer McCray's dashboard camera[7]

---

[5]It appears from the video that the other man had been the passenger in Daniel's car that night.

[6]Because Daniel's sole appellate argument focuses on the legality of the stop of his vehicle—not the legality of his arrest or the sufficiency of the evidence supporting his conviction—we need not detail the events that transpired after the initial stop of his vehicle.

[7]The video of Officer McCray's initial interaction with Daniel, captured on Officer McCray's body-worn camera, had previously been admitted into evidence without objection.

5

and hearing the parties' arguments, the trial court denied Daniel's motion to suppress[8] and made the following findings of fact and conclusions of law:

> [Y]ou need some sort of articulable basis to create reasonable suspicion to justify the traffic stop. Now in the instant case though there is prior - - some prior interaction with Mr. Daniel. And the one officer had a reasonable belief that Mr. Daniel was intoxicated. Then, saw the individual driving within a reasonably short period of time after the interaction. I think there's enough to connect the dots here.

The jury convicted Daniel and, after hearing additional testimony and arguments at the punishment phase of trial, assessed his punishment at 365 days' confinement in Tarrant County Jail and no fine. The trial court sentenced Daniel accordingly[9] but then probated his sentence for a period of 20 months. Daniel timely appealed the trial court's judgment.

## III. APPEAL

On appeal, Daniel argues that the trial court reversibly erred by overruling his motion to suppress. But his argument fails because, although he cites the correct legal

---

[8]Although Daniel did not expressly move to "suppress" any evidence, it is clear from the record that the trial court understood his complaint. His complaint on appeal comports with the one he made in the trial court. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

[9]Although the trial court's oral pronouncement of Daniel's sentence aligned with the jury's verdict on punishment, the judgment reflects a fine of $100 that the jury did not assess.

standards for reasonable suspicion and an appellate court's review of a trial court's ruling on a motion to suppress, he then misapplies those standards to the facts.

## A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor,[10] but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## B. Applicable Fourth Amendment Law

---

[10]Likewise, we review a trial court's videotape-based determination of historical facts under the same deferential standard. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623–24.

An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *See Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). Under the Fourth Amendment, a police officer may conduct an investigative detention if the "reasonable suspicion" standard is satisfied. *Johnson*, 622 S.W.3d at 384; *see Kansas v. Glover*, 589 U.S. 376, 379–80, 140 S. Ct. 1183, 1187–88 (2020). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017). Whether the totality of circumstances

8

supports reasonable suspicion is a legal determination we review de novo. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

## C. Analysis

Daniel argues that Officer McCray's actions were "totally divorced from reasonable suspicion." But again, he misapplies the standard of review by not affording the trial court's findings of fact the requisite deference. For example, Daniel contends that "Officer McCray apparently did not have any qualms about [Daniel]'s operation of a motor vehicle after speaking with [him] and determining that he was not in distress," but this is also belied by the video. Far from "not hav[ing] any qualms about" Daniel's operating a motor vehicle that night, Officer McCray expressed his concern that Daniel was impaired and repeatedly warned him that he would be arrested for DWI if he got back into his car. And at trial, Officer McCray testified that it was not safe "at all" to walk down I-30, as Daniel had said he would do.[11]

---

[11]Daniel also claims that he did not "have blood shot eyes," but the video of Officer McCray's initial encounter with Daniel was played before the trial court, and we defer to the determinations that the trial court made based on that video. *See Montanez*, 195 S.W.3d 101, 108–09; *see also Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) ("The court of appeals should view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support the denial of [the a]ppellant's motion to suppress."); *State v. Gobert,* 275 S.W.3d 888, 892 & n.13 (Tex. Crim. App. 2009) (concluding that, when "[t]he record supports [the trial court's] conclusion, even as it might also support a different conclusion . . . , we will not second-guess the trial court's determination of the facts," and noting, "Under these circumstances, it is appropriate that we defer to the trial court's primary fact-finding function.").

9

Further undermining his appellate argument, Daniel makes multiple factual assertions that the record does not support. He states that he "did not have slurred speech," but the video showed otherwise. And he says that "there was no odor of alcohol emanating from [him] or his vehicle," even though Officer McCray testified that Daniel "smelled like alcohol" when he first interacted with him. Daniel references "Officer McCray's initial report setting forth that there was weak or no odor of alcohol in this case," but no such report was in evidence, and there is nothing in the record indicating that the trial court nevertheless considered it.[12]

In addition to being slanted, skewed, and inaccurate, Daniel's rendition of the facts is also incomplete. He states that he "was able to answer all questions propounded of him" by Officer McCray, but he neglects to mention that some of his answers to Officer McCray's questions were rambling, incoherent, nonsensical, belligerent, or not even responsive to the questions asked. The video also showed Daniel leaning against the car parked next to his vehicle as he spoke with Officer McCray in the parking lot and swaying to and fro when he got up and moved around. Finally, although Daniel never explicitly admitted that he had been drinking alcohol, he was evasive when Officer McCray confronted him about his drinking, and he did not challenge Officer McCray's real-time assessment that he was "impaired." *Cf.*

---

[12]Officer McCray testified that he had written two police reports the night that he had arrested Daniel. When asked, "And you vaguely noted a possible intoxication in your first report?" Officer McCray testified simply, "Okay."

*McMurray v. State*, No. 03-19-00850-CR, 2021 WL 5579768, at *3 (Tex. App.—Austin Nov. 30, 2021, no pet.) (mem. op., not designated for publication) (listing officer's "detection of an odor of alcohol from [defendant]'s breath and person" and defendant's "nonresponsive 'Good question' in reply to [officer's] inquiry about how much [defendant] had to drink that night" as evidence of DWI); *Alonzo v. State*, 251 S.W.3d 203, 208–09 (Tex. App.—Austin 2008, pet. ref'd) (holding that a state trooper was justified in detaining and investigating a suspect where the trooper "noticed a number of suspicious factors about [the suspect], including that he had glassy eyes, was swaying and seemed unsteady, was slurring his speech, had a difficult time answering simple questions, appeared agitated, and had a moderate odor of an alcoholic beverage coming from his breath"); *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (concluding that probable cause supported a DWI arrest where "the appellant seemed intoxicated based on (a) his red, bloodshot eyes, (b) his slurred speech, (c) the smell of alcohol on his breath, (d) his evasiveness to questions, and (e) his demand to know why the officer had stopped him").[13]

---

[13]"Because reasonable suspicion is a lesser standard than probable cause, when an officer has probable cause to detain a suspect, the officer has also satisfied the reasonable suspicion standard for detention." *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g). Therefore, cases holding that an officer had probable cause to arrest a suspect for DWI necessarily also hold that the officer had reasonable suspicion to detain the suspect.

Based on the totality of the circumstances, we hold that Officer McCray's stop of Daniel's vehicle was justified by reasonable suspicion. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (noting that "[e]vidence of intoxication may include, inter alia," slurred speech, bloodshot eyes, the odor of alcohol on the person, unsteady balance, a staggered gait, and the odor of alcohol on the breath); *McMurray*, 2021 WL 5579768, at *3; *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) ("Bloodshot eyes, an odor of alcohol on a person's breath, and unsteady balance are all classic symptoms of intoxication."); *Alonzo*, 251 S.W.3d at 208–09; *State v. Garrett*, 22 S.W.3d 650, 654 (Tex. App.—Austin 2000, no pet.) ("The odor of alcohol, watery eyes, and unsteadiness are all classic signs that suggest a suspect's mental and physical faculties might be impaired."); *Chilman*, 22 S.W.3d at 56; *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that there was sufficient evidence to support an arrest for public intoxication[14] where officer, who had made numerous DWI arrests, testified that appellant was intoxicated; stated that appellant showed signs of "[s]lurred speech, bloodshot eyes, . . . a strong odor of alcoholic beverages about his breath, and also unstable balance"; and expressed a fear that appellant was a "danger to himself" and "might endanger . . . other people" if allowed to drive away); *Segura v. State*, 826

---

[14]Because being intoxicated is an element of both public intoxication and DWI, *compare* Tex. Penal Code § 49.02(a) *with* § 49.04(a); *see also id.* § 49.01(2) (defining "Intoxicated"), public intoxication cases can inform our analysis in a DWI case.

S.W.2d 178, 184–85 (Tex. App.—Dallas 1992, pet. ref'd) (determining that officer's testimony "that in his opinion appellant was intoxicated because his eyes were bloodshot, his speech was slurred, he had trouble steadying himself, and he had an alcohol odor on his breath" supported public intoxication arrest).

Because Officer McCray's warrantless stop of Daniel's vehicle was justified by reasonable suspicion, it was reasonable under the Fourth Amendment, *see Johnson*, 622 S.W.3d at 384, and the trial court did not err by denying Daniel's motion to suppress. We overrule Daniel's point.

## IV. MODIFICATION OF JUDGMENT

Although Daniel does not complain about it on appeal, we note a clerical error in the trial court's judgment. As mentioned above, the jury assessed Daniel's punishment at 365 days confinement and a $0 fine, and the trial court accordingly sentenced to him to 365 days confinement and did not pronounce a fine. The judgment, however, reflects a fine of $100. It appears from language elsewhere in the judgment that the $100 is an "EMS, Trauma Fine," which is authorized by statute. *See* Tex. Code Crim. Proc. art. 102.0185. But a fine is part of a defendant's sentence and must be orally pronounced. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Oral pronouncement is required even when the fine is authorized by statute. *See Munoz v. State*, No. 02-25-00032-CR, 2026 WL 71063, at *9 (Tex. App.— Fort Worth Jan. 8, 2026, no pet.) (mem. op., not designated for publication).

When a variation exists between the oral pronouncement of sentence and the written memorialization of the sentence, "the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004). Here, because the trial court did not orally pronounce the $100 fine, the fine's inclusion in the judgment was error. Pursuant to our authority to modify a judgment "to make the record speak the truth when the matter has been called to [our] attention by any source," *see French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992), we modify the judgment to delete the $100 fine.[15]

## V. CONCLUSION

Having overruled Daniel's only point, we modify the judgment of the trial court to delete the $100 fine and affirm the trial court's judgment as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 6, 2026

---

[15]Daniel's "failure to complain on appeal about the fine does not vitiate our authority to modify the judgment." *See Munoz*, 2026 WL 71063, at *9 n.8 (collecting cases).